PD-0077-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/19/2015 7:53:53 PM
Accepted 2/20/2015 8:37:36 AM
ABEL ACOSTA
CLERK

PD-0077-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

STEVEN COLE,                                                                 Appellant

v.

THE STATE OF TEXAS,                                                    Appellee

Appeal from Gregg County

\* \* \* \* \*

STATE'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

\* \* \* \* \*

February 20, 2015

ABEL ACOSTA, CLERK

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## TABLE OF CONTENTS

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**1) Did the Court of Appeals conduct an incorrect exigent circumstances analysis when it required proof of a "now or never" level of urgency?**

**2) Were exigent circumstances present to draw Appellant's blood without a warrant when the accident created a substantial period of delay before blood could be drawn, the officer knew that it typically took one to one and a half hours to obtain warrant, and he suspected the defendant was under the influence of illegal drugs as opposed to alcohol, which has a predictable rate of elimination?**

**3) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

**4) If a warrantless blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid and that it dispensed with the warrant requirement?**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

APPENDIX  (Opinion of the Court of Appeals)

## IDENTITY OF THE PARTIES

Appellant: **Steven Cole**.

Appellee: **The State of Texas**.

Trial Judge: **Hon. Alfonso Charles.**

Trial counsel for Appellant: **James R. (Rick) Hagan**, P.O. Box 3347, Longview, Texas 75606-3347.

Appellate Counsel for the State, **Ebb Mobley**, P.O. Box 2309, Longview, Texas 75606.

Trial counsel for the State: **Stacey L. Brownlee** and **Madison Hood**, Assistant District Attorneys, 101 East Methvin, Suite 333, Longview, Texas, 75601.

Appellate counsel for the State: **Zan Colson Brown**, Assistant District Attorney, 101 East Methvin, Suite 333, Longview, Texas, 75601, and **Lisa C. McMinn**, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# INDEX OF AUTHORITIES

## Cases

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . 15

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . 15

*Colburn v. State*, 966 S.W.2d 511(Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . 11

*Cole v. State*, __S.W.3d__,
    No. 06-13-00264-CR (Tex. App.–Texarkana, 2014). . . . . . . . . . 2, 3, 5 ,9,14

*Davis v. United States*, 131 S. Ct. 2419 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Douds v. State*, 434 S.W.3d 842 (Tex App.–Houston [14th Dist.] 2014). . . . . . . . .9

*Illinois v. Krull*, 480 U.S. 342(1987),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Karnev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . 14

*Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . 15

*Missouri v. McNeely*, 133 S.Ct. 1552 (2013). . . . . . . . . . . . . . . . . . . 5-6, 8, 9, 15

*Rhodes v. State*, 240 S.W.3d 882 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . 13

*Roaden v. Kentucky*, 413 U.S. 496 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rocha v. State*, 16 S.W.3d 1 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . 16

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . 12

*State v. Villarreal,* __S.W.3d__
    No. PD-0306-14 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. Montoya De Hernandez*, 473 U.S. 531 (1985). . . . . . . . . . . . . . . . . . . . . . 5

*Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995). . . . . . . . . . . . . . . . . . . 13

*Wilson v. State*, 311 S.W. 3d 452 (Tex. Crim. App. 2010).. . . . . . . . . . . . . . . . . 15


**Statutes**
  TEX. CODE CRIM. PROC. art. 38.23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. TRANSP. CODE § 724.011. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. TRANSP. CODE § 724.012(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
**Other**

http://www.tabc.state.tx.us/publications/brochures/BACCharts.pdf. . . . . . . . .  11n

PD-0077-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

STEVEN COLE,                                                                     Appellant

v.

THE STATE OF TEXAS,                                                      Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully urges this Court to grant discretionary review.

**STATEMENT REGARDING ORAL ARGUMENT**

The State Prosecuting Attorney does not request oral argument.

**STATEMENT OF THE CASE**

A jury convicted Appellant of intoxication manslaughter, enhanced by two prior felony convictions, and assessed a life sentence. The Court of Appeals reversed, holding that the trial court erred by admitting blood test results obtained from a

1

nonconsensual, warrantless blood draw. *Cole v. State*, __S.W.3d__, No. 06-13-00264-CR (Tex. App.–Texarkana, 2014).

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals' published opinion was issued on December 18, 2014. Neither party sought rehearing. This Court granted the State one extension of time until February 19, 2015, to file this petition.

## QUESTIONS FOR REVIEW

**1) Did the Court of Appeals conduct an incorrect exigent circumstances analysis when it required proof of a "now or never" level of urgency?**

**2) Were exigent circumstances present to draw Appellant's blood without a warrant when the accident created a substantial period of delay before blood could be drawn, the officer knew that it typically took one to one and a half hours to obtain warrant, and he suspected the defendant was under the influence of illegal drugs as opposed to alcohol, which has a predictable rate of elimination?**

**3) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

**4) If a warrantless blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid and that it dispensed with the warrant requirement?**

2

## ARGUMENT

**Grounds I and II**

This case involves a warrantless blood draw following Appellant's arrest for intoxication manslaughter. The Court of Appeals noted that warrantless searches have been upheld "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime. *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S. Ct. 2796, 37 L. Ed. 2d 757 (1973)." *Cole*, slip op. at 11 n. 5. It concluded that, because Appellant's blood could have been drawn with a warrant three hours and forty minutes after the accident, when police suspected intoxication by methamphetamine, the period of delay "fails to reach the 'now or never' level contemplated by exigent circumstances precedent." *Id.* at 20-21. But while a "now or never" situation always presents exigent circumstances, the Supreme Court does not require that level of urgency in every case. The Court of Appeals erred by imposing an improperly high burden on the State and by finding that exigent circumstances were not present in this case, which involved a significant period of delay and a suspected intoxicant other than alcohol.

At 10:20 p.m. in downtown Longview, Appellant ran a red light at an estimated 110 miles per hour and struck a car in the intersection, killing the driver and causing his car to burst into flames. RRIII: 24, 27-32, 47, 52, 153, 165, 175. Due to the fire

3

and degree of impact, there was a large debris field, and traffic was blocked in all directions. RRIII: 37-39, 114-116.

Appellant was taken to the hospital for evaluation. RRIII: 234. He admitted to taking "a couple of hits of meth," and an officer observed that he was "tweaking," i.e., making involuntary bodily movements. RRIII: 87, 92, 221, 235. He was arrested at the hospital at 11:38, and after he refused to voluntarily provide a specimen, his blood was drawn without a warrant at 12:20 a.m. SX 9, SX 10. RRIII: 223-24. Appellant's blood had a 0.2 level of amphetamine and a 0.23 level of methamphetamine, which was described by the toxologist as at being at the "very high end of a therapeutic range," but a "moderate dose" for recreational use that "could" cause intoxication. RRIV: 20-21.

Officer Higginbotham testified that, in his experience in Gregg County, it would take an hour to an hour and a half to obtain a warrant "at the best" and it would have been possible, but not feasible, to write up a probable cause affidavit to submit to a justice of the peace. RRIII: 183-85. A dozen officers worked the accident, which happened during shift change.[1] RRIII:38. No officer was available to obtain a warrant, as they were all were performing necessary functions at the scene or at the

---

[1]The Longview police department had 13 officers on the evening shift and 11 on the midnight shift that night. RRIII: 178-80.

4

hospital. The trial court admitted the evidence from the warrantless blood draw, based on exigent circumstances. The trial court determined that unlike a "regular DWI," the circumstances here did not allow time for a warrant. RRIII: 197-99. [2]

Police need not obtain a warrant where exigent circumstances would make doing so impractical. *U.S. v. Montoya De Hernandez*, 473 U.S. 531, 553 (1985). The Court of Appeals correctly noted that, "The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood-alcohol test." *Cole*, slip op. at 12 (citing *Missouri v. McNeely*, 133 S.Ct.

---

[2]When admitting the evidence, the trial judge made the following comments,

This case, you have one of the most major intersections in Longview, Texas, shut down. You have numerous officers on the scene. While there are other officers who could assist in some ways, the lead investigator, the person who has the specialized training in order to do an accident reconstruction, an accident investigation, is the officer who has to remain on the scene. So there are those exigent circumstances. You have factors that lead that officer having to remain there. There was a large debris field; fire; again, a major intersection being involved. It was not just a typical little DWI arrest. Secondly, you also have the defendant currently at the hospital being transported by EMS. The officers also have to be concerned of whether he's given any additional medications, what his health and safety is. So there are other factors involved, other -- that do not give time for a warrant that may be there in a regular DWI. Also, the timing of all to get the scene cleared is an exigent circumstance. RRIII: 197-98.

5

1552, 1561 (2013)).  However, in applying that test, the Court of Appeals went astray by requiring a "now or never" situation for every type of exigency.

When the Court of Appeals held that the "now or never"threshold had not been met, it cited cases that involved the imminent destruction of evidence.  That may be the appropriate standard when there is a possibility that contraband may be flushed down the toilet, but *McNeely* noted that blood draws are different.  "The context of blood testing is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a 'now or never' situation." 133 S.Ct. at 1561.  That is, dissipation of alcohol from the system is distinguishable from when "a suspect actually has physical control over easily disposable evidence." *Id*.  But this does not mean that dissipation cannot be an important factor along with the passage of time.  The Court explained that "a significant delay in testing will negatively affect the probative value of the results" and acknowledged that "some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* (internal quotation marks omitted).   There are two important components to this observation: time and degree of destruction.

When a suspect has physical possession of an easily destructible item and the circumstances suggest that he may be about to destroy it, officers must seize it

6

immediately or lose it forever. But when the item is in the suspect's bloodstream he does not have independent control over it and cannot immediately destroy it. The body will eliminate it automatically over a period of time. When the period of dissipation is unknown or is known and evidence will be eliminated during the time required to obtain a warrant, the evidence is just as susceptible to destruction as evidence that is about to be consumed by fire or flushed down the toilet. In the former situation, because the destruction time is slowed, the "imminence" factor is also slowed. So the "now" in "now or never" isn't now; it's within the next, perhaps, two hours.

Similarly, the threat to the evidence need not rise to the level of total destruction. Evidence can lose probative value over time. *Id*. ("a significant delay in testing will negatively affect the probative value of the results."). Although not destroyed, evidence can be degraded to the degree that it is useless or significantly less useful. Retrograde extrapolation is possible because the degree of absorption and elimination of alcohol is relatively fixed. But other variables that may be unknown will effect the equation so that the measure of intoxication at a given time is less certain. Other drugs like cocaine may not be completely eliminated, from the bloodstream, but the metabolites left behind do not prove intoxication or pinpoint the amount or time of consumption.

The *McNeely* Court refused the State's invitation to hold that "the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." 133 S.Ct. at 1556. Instead, it held that the existence of exigent circumstances must determined on a case-by-case basis, considering the totality of the circumstances. *Id.* *McNeely* did not address whether the facts of that case presented exigent circumstances, so it is not authoritative on whether exigent circumstances are present in any particular set of circumstances.[3] Unfortunately, several courts of appeals have misconstrued its limited holding and have held that under *McNeely*, exigent circumstances were not present. This Court should grant review and dispel the notion that *McNeely* sets out a new test for determining exigent circumstances for blood draws and specifically that it imposes

---

[3]*See id*. at 1567, 1568. ("The State did not argue that there were exigent circumstances in this particular case because a warrant could not have been obtained within a reasonable amount of time....Because this case was argued on the broad proposition that drunk-driving cases present a per se exigency, the arguments and the record do not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant.... No doubt, given the large number of arrests for this offense in different jurisdictions nationwide, cases will arise when anticipated delays in obtaining a warrant will justify a blood test without judicial authorization, for in every case the law must be concerned that evidence is being destroyed. But that inquiry ought not to be pursued here where the question is not properly before this Court.")

a strict "now or never" standard.

Although *McNeely* held that alcohol's natural elimination from the body is not enough to automatically establish exigent circumstances in all DWI cases, when something out of the ordinary occurs that causes significant delay and impedes the ability to obtain and execute a warrant, the elimination rate of the substance becomes increasingly important.

Unlike a "regular" DWI, this case involves a situation where considerable delay had already taken place. Two hours had already elapsed when Higginbotham made the decision to forego a warrant. The Court of Appeals held that a total delay of three hours and forty minutes was not enough to constitute exigent circumstances. *Cole*, slip op. at 20. But, as pointed out above, significant delay can rise to the level of exigent circumstances.

The severity of the accident can interfere with the ability to timely obtain a warrant. The number of police involved in the investigation, the ability to process a warrant application during the investigation, and delay caused by the time needed to investigate is relevant. *Douds v. State*, 434 S.W.3d 842, 853-54 (Tex App.–Houston [14th Dist.] 2014, pet granted).[4] "The State should be responsible for asking officers

---

[4]This Court granted review of three grounds, including ground three, which asks, "Did the Court of Appeals err in finding insufficient exigent circumstances where the arresting officer was delayed in obtaining the blood draw by his investigation of the

9

who handle accidents to explain the demands of a particular investigation that made it impractical for police to obtain a warrant before any blood alcohol evidence dissipated." *Id*. at 854. That is exactly what the State did here. Half of the Longview police force on duty during the evening and midnight shifts was at the accident scene, performing necessary functions. Yet the Court of Appeals observed, "There is no indication that officers not on the scene were unavailable to help obtain a warrant." *Cole*, slip op. at 21. Under this theory, if there is even one remaining officer not actively involved in the case, there will never be exigent circumstances.

In addition to the substantial delay, this case involved methamphetamine. Street drugs have different methods of ingestion with correspondingly different rates of absorption.[5] The Court of Appeals recognized the possibility that methamphetamine has a different rate of elimination, but required proof of the actual rate, holding, "Without some indication of when the methamphetamine evidence would begin to dissipate, we cannot conclude that such evidence would likely be destroyed even if obtaining the warrant took an extra hour and a half." *Id*. at 18 n. 7.

---

accident scene which involved an injury?"

[5]The toxicologist testified that the rate of absorption of methamphetamine depends on the means of ingestion. The fastest is by injection, followed by snorting, smoking, and oral administration. RRIV: 15. But this evidence was not before the trial court at the time of its ruling.

10

But the issue is not the evidence before the trial or appellate courts, but the reasonableness of the officer's actions based on the facts known to him at the time. *See Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998) ("We apply an objective standard of reasonableness in determining whether a warrantless search is justified, taking into account the facts and circumstances known to the police at the time of the search.").  Unlike alcohol, the absorption and elimination rates of street or prescription drugs is neither commonly known nor publicized.[6]  A reasonable officer should not be expected to know the rate of absorption and elimination of street drugs of unknown purity and method of administration.  The unknown dissipation rate makes it all the more reasonable to believe that the evidence would likely be destroyed or significantly degraded had the officer waited an additional hour and a half to get a warrant from the time the blood was actually drawn.[7]

**Ground III**

The Court of Appeals held that the warrantless blood draw was not permissible under TEX. TRANSP. CODE § 724.012(b) (mandatory blood draw statute), citing *State v. Villarreal,* __S.W.3d__ No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex.

---

[6]http://www.tabc.state.tx.us/publications/brochures/BACCharts.pdf

[7]The officer was also concerned about the effect that other medications Cole might receive at the hospital would have on the ability to determine what was in his system at the time of the accident.  RRIII: 187.

11

Crim. App. 2014).  *Villarreal* is not currently final, because the motion for rehearing is pending.  This Court has granted  State's petitions challenging opinions from other courts of appeals holding that officers who obtain a non-consensual blood draw pursuant to the statute without a warrant violate the Fourth Amendment.  See *Smith,* PD-1615, *Reeder*, PD0601-14, *Holidy*, PD-0622-14, *Weems*, PD-0635-14, and *Douds*, PD-0857-14.  This petition raises the same issues.

Specifically, the State contends that the mandatory blood draw provision in the statute applies only in the absence of a search warrant, under the express terms of the statue.  *See State v. Johnston*, 336 S.W.3d 649, 660 (Tex. Crim. App. 2011) ("Chapter 724 is inapplicable when there is a search warrant" and that the statute "governs the State's ability to obtain a breath or blood sample from a DWI suspect when there is no warrant.").

In addition, when a defendant drives a vehicle on a public roadway while intoxicated, he gives advance, irrevocable consent and either waives any warrant requirement or is estopped from demanding it.

TEX. TRANSP. CODE § 724.011 provides that a person arrested for certain offenses, including driving while intoxicated, is deemed to have consented, subject to chapter 724, to submit to the taking of a specimen of his breath or blood to determine the presence of an intoxicant.  A defendant who exercises the privilege of

12

driving on public roads and is arrested for under circumstances provided in subsection (b) has consented to the taking of his blood, is not entitled to require that police first obtain a warrant or meet any recognized warrant exception. *Cf. Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007) (the doctrine of estoppel by contract bars a party who accepts the benefits of a contract from complaining about its existence, validity, or effect).

Next, the Fourth Amendment requires only reasonableness; a search warrant or exception is not essential for a search to be reasonable. "The ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). A search that: complies with the statute, is given with advanced, subsequently withdrawn consent, and constitutes a search incident to arrest for evidence of the crime of arrest (see below) is reasonable.

Finally, the statute is a codification of the search incident to arrest exception to the warrant requirement for a narrow class of crimes and a blood draw is a reasonable type of search. The statute requires a specific type of search–a specimen of breath or blood–incident to a narrow class of felony intoxication-related arrests. The scope of the search is tied to the offense of arrest. A blood draw conducted in accordance with Chapter 724 is a reasonable search incident to lawful arrest and is permissible without a warrant.

**Ground IV**

The blood draw in this case occurred in 2011, before any court had held that the statute violates the Fourth Amendment. At the time of the search, the statute was presumptively constitutional. *See Karnev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("Statutes are presumed to be constitutional until it is determined otherwise."). So even if this Court determines that the statute is invalid, the blood test results in this case should not be suppressed under either the Federal or Texas exclusionary rules.[8]

The Supreme Court has held that the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted objectively reasonably by relying on a statute that was later declared unconstitutional, *Illinois v. Krull*, 480 U.S. 342, 349-57 (1987), or on binding judicial precedent that was subsequently overruled. *Davis v. United States*, 131 S. Ct. 2419, 2428-34 (2011).

In addition to the presumptively constitutional mandatory draw statute, before *Villarreal*, this Court had held that the statute "expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the

---

[8]The concurring opinion in this case addressed good faith, believing that the federal good faith doctrine applies, but the good faith exception to our State exclusionary rule does not. *Cole*, slip op. at 22-26.

14

absence of a search warrant," and "enabl[es] [officers] to draw blood in certain limited circumstances even without a search warrant." *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002). Prior to *McNeely,* this Court held that that dissipation of alcohol from the blood stream alone constitutes exigency which, combined with probable cause and a reasonable method of drawing blood, does not require a warrant. *Aliff v. State*, 627 S.W.2d 166, 169-70 (Tex. Crim. App. 1982). *Davis* held that it was inappropriate to apply the exclusionary rule to a search that was, at the time, permissible under biding precedent. 131 U.S. at 2424-28.

Here, the officer drew Appellant's blood under the authority of a presumptively valid statute and caselaw interpreting it. Applying the exclusionary rule would not serve the rule's purpose of deterring police misconduct. For purposes of the Fourth Amendment, the good-faith exception prevents suppression.

Suppression is also not justified under Texas' exclusionary rule. TEX. CODE CRIM. PROC. art. 38.23(a) prohibits the use of evidence obtained in violation of the law. But not every violation of the law is subject to exclusion under article 38.23. This Court has not applied the plain meaning of the statute and instead has read into it a requirement that the violation be related "to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Wilson v. State*, 311 S.W. 3d 452, 459 (Tex. Crim. App. 2010). In *Miles v. State*, 241 S.W.3d 28

15

(Tex. Crim. App. 2007), the Court held that a person's violation of traffic laws in order to make a citizen's arrest did not implicate article 38.23, noting that "only those acts which violate a person's privacy rights or property interests are subject to the state or federal exclusionary rule." *Id*. at 36, 46. And in *Rocha v. State*, 16 S.W.3d 1, 18-19 (Tex. Crim. App. 2000), the Court held that article 38.23 does not apply to evidence obtained in violation of the Vienna Convention because the treaty is intended to protect nations; it does not create enforceable individual rights.

A similar suppression exemption should be recognized here because the primary purpose of article 38.23 is not furthered when police comply with an existing, presumptively valid statute and case law interpreting it.

## **PRAYER FOR RELIEF**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, that the case be set for submission, and that after submission, this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

/s/ LISA C. McMINN

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

I certify that, according to the WordPerfect word count tool, this document

contain 4425 words.


/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney


## CERTIFICATE OF SERVICE

I certify that on this 19th day of February, 2015, the State's Petition for

Discretionary Review was served via certified electronic service provider to:

Zan Colson Brown
Assistant District Attorney
101 East Methvin, Suite 333
Longview, Texas, 75601
Zan Colson Brown
zan.brown@co.gregg.tx.us

Ebb Mobley
P.O. Box 2309
Longview, Texas 75606
ebbmob@aol.com


/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

**APPENDIX**



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00179-CR

_____

STEVEN COLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 41312-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter
Concurring Opinion by Justice Moseley

# OPINION

Steven Cole drove a Ford F-250 through downtown Longview, Texas, at 10:20 p.m., ran a red light, and collided with a Toyota Tundra driven by Jim Hightower. Witnesses described the collision as an explosion. Hightower died instantly, and the Toyota caught fire and burned. Cole admitted that he had taken methamphetamine that night. Police attempted to obtain a voluntary blood sample from Cole, but he refused. In accordance with Texas statutory law, a nurse obtained a sample of Cole's blood, which contained methamphetamine and amphetamine. Cole moved to suppress evidence pertaining to the blood specimen claiming that the specimen was seized without a warrant, consent, or exigent circumstances. The trial court found that exigent circumstances existed and admitted the blood test into evidence. A jury found Cole guilty of intoxication manslaughter and assessed a life sentence.[1]

Cole argues that the trial court erred in denying his motion to suppress the evidence obtained through a warrantless, nonconsensual blood draw. We find that no exigent circumstances existed to justify the warrantless blood draw and reverse the judgment and remand to the trial court for further proceedings.

## I.    Factual Background

This collision occurred around 10:20 p.m., December 1, 2011, in downtown Longview, Texas. Several witnesses testified that Cole was speeding just prior to impact. Hightower was killed in the crash, and when emergency responders arrived, Hightower's Toyota was engulfed in

---

[1]The State alleged and proved two prior Louisiana felony convictions to enhance the punishment range to twenty-five years' to ninety-nine years', or life. *See* Tex. PENAL CODE ANN. § 12.42(d) (West Supp. 2014).

flames.  In order to remove Cole from his truck, police officers had to break out the rear window of the truck and pull him out.  Prior to the arrival of emergency medical personnel, Officer Audrey Wright arrived on the scene and spoke briefly with Cole.  Cole stated his address was on Texas Street, but he did not know where Longview was and had no idea why he was in Longview.  Paramedics examined Cole, and he was suffering pain "all over," specifically in the chest.  He also had lacerations to his hands.  During the examination, Cole told one of the paramedics that he had taken two hits of methamphetamine that night.  Cole was taken by ambulance to Good Shepherd Hospital.  During the ambulance ride, Cole again indicated that he had taken methamphetamine that night, even commenting that he was "getting too old for this shit," apparently referring to methamphetamine.

Being on call that week and also being an accident investigator, Longview Police Officer Jeremy Higginbotham was called to the scene of the accident shortly after it occurred.  Higginbotham arrived at approximately 11:00 p.m.  After examining the vehicles involved, taking measurements, and making calculations, Higginbotham estimated that Cole was driving about 110 miles per hour when he collided with the Toyota Tundra.  Higginbotham left the scene at approximately 2:00 a.m. and went to the police station to complete his initial report and some other documentation.  He returned to the scene around 3:45 a.m., when the trucks involved were being loaded onto wreckers.

Officer Wright accompanied Cole to the hospital, and she communicated, both directly and through another officer, with Higginbotham and told him that Cole had admitted taking methamphetamine and that he was "tweaking," making involuntary movements, mumbling to

3

himself, and not making any sense.[2] Wright was told to read the DIC-24 form, give Cole his statutory warnings, and obtain a blood sample. Wright gave Cole the warnings, and Cole was arrested at 11:38 p.m. Cole did not consent to having his blood drawn, and at 12:20 a.m., his blood was drawn involuntarily, pursuant to the mandatory blood-draw statute. Wright testified that, while she was reading him the warnings, he repeatedly interrupted her saying that he was not drunk but rather that he had taken methamphetamine.

About a dozen officers were working the accident scene and the surrounding area. Due to the accident, the officers on the scene had to block traffic at the intersection where the accident occurred as well as nearby intersections. The fire department was also on the scene to deal with the burning Toyota. Higginbotham testified that all available officers were performing necessary functions either at the scene or at the hospital with Cole and that there was not an officer available to pursue a warrant for Cole's blood.

Justin Schwane, a toxicological chemist at Dallas County Southwestern Institute of Forensic Science, tested Cole's blood sample. The test revealed that Cole's blood had a 0.2 level of amphetamine and a 0.23 level of methamphetamine. Schwane testified that that level of methamphetamine in Cole's blood "would be at the very high end of a therapeutic range" but that, in terms of other drug levels, this was a "moderate dose." That level of methamphetamine could cause intoxication, but he could not say with 100 percent certainty that Cole was intoxicated.

---

[2]A nurse that treated Cole at the hospital testified that, while taking his history and questioning Cole in order to determine the treatment needed, he was oriented to person, place, time, and event and was able to answer her questions coherently.

## II.     Admissibility of Evidence Obtained Through the Warrantless Blood Draw

At trial, Cole moved to suppress the evidence obtained through the warrantless blood draw. The State argued that there were exigent circumstances negating the need for a search warrant.[3] After the issue was addressed during the voir dire of Higginbotham—the officer in charge of the accident scene—the trial court made detailed findings, denied Cole's motion, and admitted evidence regarding the results of the blood test. In his first point of error, Cole contends that the trial court erred in denying his motion to suppress because the State failed to sufficiently "establish exigent circumstances to justify a warrantless[,] nonconsensual blood draw."

### A.     Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the testimony presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). When, as here, there are no explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling, assuming that the trial court made implicit findings of those facts that are supported by the record and that buttress its ruling. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000). We will uphold the court's ruling if it is correct under any theory of law applicable to the case. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

---

[3]The good-faith exception, discussed in the concurring opinion, was not raised at trial or on appeal and, therefore, we do not address it.

Although we "give almost total deference to [the] trial court's express or implied determination of historical facts," we "review de novo the court's application of the law of search and seizure to those facts." *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). To be sure, the reasonableness of a seizure is a fact-sensitive inquiry, but it is "ultimately a question of substantive Fourth Amendment law." *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Therefore, we assume that the trial court made findings of historical fact favorable to its ruling, but whether those facts amount to a reasonable seizure is a question of law that we review de novo. *See id.*

## B. Requirement of a Search Warrant

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless certain requirements are met. U.S. CONST. AMEND. IV; *see also* TEX. CONST. art. I, § 9. This right "proscribes all unreasonable searches and seizures," *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012), and its "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary invasion by government officials," *Haynes v. State*, 475 S.W.2d 739, 741 (Tex. Crim. App. 1971).

"Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, [the Supreme Court of the United States] has inferred that a warrant must generally be secured." *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011). Thus, "it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few

6

specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *Gonzales*, 369 S.W.3d at 854. "'Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police.'" *Bray v. State*, 597 S.W.2d 763, 765 n.1 (Tex. Crim. App. [Panel Op.] 1980) (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)). The warrant requirement has been described as one of "the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." *Johnson v. United States*, 333 U.S. 10, 17 (1948).[4]

"The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn . . . ." *Jones v. United States*, 357 U.S. 493, 499 (1958). Those exceptions include "voluntary consent to search, search under exigent circumstances, and search incident to arrest." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). It is the State's burden to show that a warrantless search falls within one of these exceptions. *Id*. For example, a warrantless seizure of a blood sample can be constitutionally permissible if the State proves that officers have probable cause to arrest a suspect, exigent circumstances exist, and a

---

[4]Judicial issuance of a warrant is important because it "provides . . . a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Hudson v. State*, 588 S.W.2d 348, 351 (Tex. Crim. App. 1979) (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 568–80 (1991) (internal quotation marks omitted)). A neutral magistrate's prior review "prevent[s] hindsight from coloring the evaluation of the reasonableness of a search or seizure." *United States v. Martinez–Fuerte*, 428 U.S. 543, 565 (1976); *see also Beck v. Ohio*, 379 U.S. 89, 96 (1964) ("An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."); *Clay v. State*, 391 S.W.3d 94, 100 n.21 (Tex. Crim. App. 2013) ("'[O]ne important function of the warrant requirement is to facilitate review of probable cause and avoid justification for a search . . . by facts or evidence turned up in the course of [its] execution.'" (quoting Wayne R. LaFave, 2 Search and Seizure: A Treatise on the Fourth Amendment § 4.3(b), at 511 (4th ed. 2004))).

7

reasonable method of extraction is available. *Schmerber v. California*, 384 U.S. 757, 767–68 (1966); *State v. Mosely*, 348 S.W.3d 435, 440 (Tex. App.—Austin 2011, pet. ref'd).

### C. Burden To Prove an Exception to the Warrant Requirement

"A defendant who alleges a Fourth Amendment violation has the burden of producing evidence that rebuts the presumption of proper police conduct. He may carry this burden by establishing that the seizure occurred without a warrant." *State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011) (footnotes omitted); *see Robinson*, 334 S.W.3d at 780 (Cochran, J., concurring); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The burden then shifts to the State to prove that the seizure was nonetheless reasonable. *Robinson*, 334 S.W.3d at 779; *Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007). Here, there is no dispute that Cole's blood was taken without a warrant, and the record establishes that Cole would not consent to having his blood drawn. Therefore, the State bore the burden of proving that the seizure was reasonable.

### D. Implied Consent and Mandatory Blood Draw Statutes

The State's first argument is based on Section 724.011(a) of the Texas Transportation Code, which states, in relevant part:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle, in a public place . . . the person is deemed to have consented . . . to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine . . . the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

The State contends that, under Section 724.011(a), the seizure of Cole's blood to test for intoxication was reasonable because "Cole had impliedly consented to having his blood drawn

8

when he chose to drive . . . while intoxicated."  Here, Cole explicitly refused consent to take his blood.  This statute does not authorize drawing blood from a defendant, without his/her consent, unless Section 724.012(b) is involved.  TEX. TRANSP. CODE ANN. § 724.013 (West 2011) ("Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.")

Next, the State argues that the blood draw was reasonable and/or consensual under the mandatory blood-draw provisions of Section 724.012(b)(1)(A) of the Transportation Code, which, in the absence of consent, requires officers to obtain samples of breath or blood when someone is killed in a motor vehicle accident and the officer has reasonable grounds to believe the person was operating a motor vehicle while intoxicated.  Here, there is no dispute that the officers on the scene had reasonable grounds to believe that Cole was driving while intoxicated, that Cole refused to consent to having his blood drawn, and that a death resulted from the collision.

The Texas Court of Criminal Appeals has very recently held that the provisions in the Transportation Code—the implied consent law and the mandatory blood draw law—by themselves, do not form a constitutionally valid alternative to the Fourth Amendment warrant requirement. *State v. Villareal*, No. PD-306-14, 2014 WL 6734178 (Tex. Crim. App. 2014).

Prior to the *Villareal* opinion, this Court and several of our sister courts held that warrantless, nonconsensual blood draws, even taken pursuant to the mandatory provisions of the blood draw statute were unconstitutional in the absence of exigent circumstances.  *See Reeder v. State*, 428 S.W.3d 924 (Tex. App.—Texarkana 2014, pet. granted); *Sutherland v. State*, 436

9

S.W.3d 28 (Tex. App.—Amarillo 2014, no pet.); *Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted); *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio May 14, 2014, pet. granted); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication).

### E.    *McNeely* **Applies to this Case**

The State contends that *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), is inapplicable to the present case because (1) it was decided after Cole's blood was drawn; and (2) it is too narrow to apply to Cole's case.

The *McNeely* case was decided in April 2013. *McNeely*, 133 S.Ct. at 1552. The accident and blood draw in Cole's case occurred in December 2011. Cole was indicted February 23, 2012, and his trial was from July 29, 2013, through August 1, 2013. The State contends that *McNeely* is inapplicable because it was not decided until after the events in this case. We disagree.

New rules governing the conduct of criminal prosecutions apply retroactively to all cases pending on direct appeal or not yet final at the time the new rule is announced regardless of whether they constitute a clear break from past precedent. *Griffith v. Kentucky*, 479 U.S. 314, 326–28 (1987), *see McClintock v. State*, No. PD-0925-13, 2014 WL 4843959 (Tex. Crim. App. Oct. 1, 2014); *Steadman v. State*, 360 S.W.3d 499, 504 n.13 (Tex. Crim. App. 2012)). Therefore, *McNeely* must apply to this case.

The State also argues that *McNeely* is too narrow to apply because the *McNeely* case did not involve exigent circumstances other than the dissipation of alcohol from the blood stream.

10

The State contends that there are several exigent circumstances present in this case that distinguish it from *McNeely* and establish the reasonableness of the seizure.

## F.        Exigent Circumstances

"'We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.'"    *Bray*, 597 S.W.2d at 765 n.1 (quoting *McDonald*, 335 U.S. at 456). Exigent circumstances typically fall within one or more of three categories:  (1) "providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance"; (2) "protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous"; and (3) "preventing the destruction of evidence or contraband." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).  Here, the State argued that this case falls within the third category, and "the need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search."[5]    *King*, 131 S.Ct. at 1856 (internal quotation marks omitted).

Following *McNeely* and *Schmerber*, we determine exigency based on whether the specific "facts and circumstances of the particular case" made "obtaining a warrant impractical." *McNeely*, 133 S.Ct. at 1560–61; *Schmerber*, 384 U.S. at 770.  There is no per se rule that the time an officer takes to conducting an accident investigation in a suspected DWI case will provide exigent circumstances authorizing a warrantless blood draw.  *Douds*, 434 S.W.3d at 854.

---

[5]Courts have held that permitting a search "without prior judicial evaluation" is reasonable "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime." *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973).

The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood-alcohol test. *McNeely*, 133 S.Ct. at 1561; *Schmerber*, 384 U.S. at 770.

During the trial in this case, the State attempted to establish exigent circumstances through the voir dire examination of Higginbotham, and both Cole and the State examined the witness regarding the exigencies of the circumstances. In admitting testimony and evidence regarding the blood test, the trial court found that the facts were distinguishable from *McNeely*, and that the State had shown the existence of exigent circumstances that authorized the warrantless search.

In summary, the trial court found that the following exigent circumstances justified the warrantless blood draw: (1) major intersections had to be closed and traffic rerouted; (2) numerous officers were at the scene, each with a specific job to do, and none could be spared to seek a warrant; (3) due to his role, Higginbotham had to remain at the scene; (4) the magnitude of the accident, i.e., that it involved a death, a fire, a large debris field, and traffic issues; (5) Cole's health and safety and concern that the hospital could give him additional medications; and (6) the time needed to get the scene cleared.

The State argued at trial and on appeal two additional factors in support of an exigency finding: dissipation of the drug levels in Cole's blood and the time needed to obtain a warrant. The biggest concern in the State's argument is the dissipation of the drug levels in Cole's blood during the time the "officers were investigating the scene, controlling traffic, documenting

12

evidence, interviewing witnesses before anybody could get back to the office and seek a warrant." While Higginbotham testified that Cole's body was metabolizing whatever drugs were in his blood during the time the accident was under investigation, there is no evidence in the record regarding the rate methamphetamine is metabolized by the body or the rate at which it dissipates.

The State also urged exigency based on the time needed to obtain a warrant. Higginbotham testified that, in his experience in Gregg County, it would take an hour to an hour and a half to obtain a warrant "at the best." According to Higginbotham, to obtain a warrant, either he or Wright, who was with Cole at the hospital, or both, would have to give a statement, "draw up [their] probable cause . . .[,] send it to a judge, and get the judge to sign it, send it back to us." Higginbotham admitted that, on occasion, in the middle of a traffic accident investigation, he had taken time out of working the accident to obtain a warrant. Even though he knew that there was a rotation of judges "on call" and available at any time of day to make a probable cause determination for purposes of issuing a warrant, he admitted that at no time during this investigation did he discuss with any other police personnel the possibility of getting a warrant to draw Cole's blood.

*McNeely* sheds light on the specific types of facts that may be pertinent to a case-by-case exigency inquiry. In *McNeely*, the United States Supreme Court agreed that metabolization of alcohol is one factor to consider in analyzing exigency. "[B]ecause an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *McNeely*, 133 S.Ct. at 1561. But the Court also

13

recognized that, "because a police officer must typically transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test, some delay between the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant." *Id*. If the "warrant process will not significantly increase [this] delay . . . because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer," the court reasoned, "there would be no plausible justification for an exception to the warrant requirement." *Id*.

In addition, the Court noted "advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple." *Id*. at 1561–62. The Court explained that "technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency," particularly given that blood-alcohol evidence "is lost gradually and relatively predictably." *Id*. at 1562–63.

In *Weems*, the State argued that exigent circumstances existed because the case involved an accident and that, under *Schmerber*, the search was permissible. However, the court of appeals, citing *McNeely*, noted that technological advancements have been made since *Schmerber*, making it much easier and quicker to obtain a warrant. *Weems*, 434 S.W.3d at 665–66. In *Weems*, the officer testified (1) that he made no effort to obtain a warrant, (2) that there

were other officers present at the scene, (3) that there was an accident, (4) that the suspect driver and passenger involved in the accident were injured and taken to the hospital, and (5) that it took three hours after the suspect arrived at the hospital for the blood to be drawn. *Id.* at 666. The court noted that the record did not contain, as mentioned in *McNeely*, the procedures for obtaining a warrant, the availability of a magistrate judge, or the practical problems of obtaining a warrant within a timeframe that preserved the opportunity to obtain reliable evidence. *Id.* The court of appeals found that under the totality of the circumstances, the record did not show that the warrantless blood draw was justified by the exigencies of the circumstances. *Id.*

In *Douds*, people were injured in an accident involving a driver suspected of being under the influence. 434 S.W.3d 842. The driver's blood was taken under the mandatory blood-draw statute. *Id.* at 845–46. The State argued that, because there was an accident involving injury or death, an exigent circumstance existed, but the Fourteenth Court of Appeals stated, "[T]he focus of exigent circumstances analysis in this context is not on the delay attendant to an investigation . . . but on the delay necessary to obtain a warrant." *Id.* at 853; *see McNeely*, 133 S.Ct. at 1563, ("[E]xigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process."). The Fourteenth Court of Appeals further noted that "the State must prove that '*the delay necessary to obtain a warrant, under the circumstances*, threatened the destruction of evidence.'" *Douds*, 434 S.W.3d at 853 (quoting *Schmerber*, 384 U.S. at 770; *accord Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) (holding State has burden to show "exigent circumstances . . . made obtaining a warrant impracticable"); *Crane v. State*, 786 S.W.2d 338, 346 (Tex. Crim. App. 1990) ("In

15

order for a warrantless arrest or search to be justified, the State must show . . . the existence of circumstances which made the procuring of a warrant impracticable.").

In *Douds*, the Fourteenth Court of Appeals found that the record did not reflect exigent circumstances because it contained no mention of a warrant and because there was no evidence regarding what the officer knew regarding the time needed to obtain a warrant. *Douds*, 434 S.W.3d at 855. It is noteworthy that, in *Douds*, much like the present case, the State and the dissent urged the court to grade the severity of the accident in determining the existence of exigent circumstances. *Id.* at 853–54. In response, the majority stated,

> To ensure that the exigencies of the situation make dispensing with the constitutional requirement of a warrant "imperative," courts must focus on whether the State showed that police could not reasonably obtain a warrant, not on whether it showed how severe the accident was. This distinction is not merely a semantic one: the difference between the delay attendant to investigating an accident and addressing injuries and the delay necessary to obtain a warrant can be substantial depending on the facts of a particular case. Even if an officer's investigation of a "serious" accident lasts for an hour, the availability of another officer 15 minutes into the investigation, or the presence of medical personnel to treat injuries, could significantly reduce the delay necessary to obtain a warrant. Alternatively, if a lone officer discovers an apparently intoxicated driver during a midnight traffic stop not involving any accident, the delay necessary to obtain a warrant could be substantial if there is no magistrate available . . . .
> [T]he State should be responsible for asking officers who handle accidents to explain the demands of a particular investigation that made it impractical for police to obtain a warrant before any blood alcohol evidence dissipated.

*Id.* (citations omitted).

In the unpublished case of *Pearson v. State*, several people were injured in an accident and one of the drivers, Pearson, was suspected of being under the influence. *Pearson v. State,* No. 13-11-00137-CR, 2014 WL 895509, at *3 (Tex. App.—Corpus Christi Mar. 6, 2014, pet. ref'd) (mem. op., not designated for publication). Trooper Aguilar arrived at the scene at about

16

4:50 a.m. *Id.* Pearson smelled strongly of alcohol and told Aguilar and an emergency medical worker that he had been drinking that night. *Id.* When Aguilar completed his investigation at the scene, he went to the hospital, arriving at about 10:00 a.m., about six hours after the accident, to speak with Aguilar. *Id.* When Pearson refused to consent to a blood-draw, his blood was drawn pursuant to the mandatory blood draw statute. *Id.*

At trial, Aguilar testified that he was the only officer on duty that morning and that he was solely responsible for securing the accident scene and preserving and collecting the evidence. *Id.* Aguilar testified that he did not obtain a warrant because, as it was Sunday, it would have taken at least three hours and because he feared the potential evidence of intoxication was rapidly degrading. *Id.* According to his testimony he obtained Pearson's blood sample in reliance on the mandatory blood-draw statute. *Id.* Pearson argued that Aguilar created the exigent circumstances by waiting so long to seek a blood sample.[6] *Id.* The Corpus Christi Court of Appeals concluded that the trial court was "within its discretion in determining that Trooper Aguilar acted under exigent circumstances in having [Pearson's] blood drawn without a warrant." *Id.* at *4.

Initially, we must note the primary difference between the facts of this case and those of *McNeely* and its progeny: this case involves alleged intoxication by methamphetamine rather

---

[6]Determining whether an officer impermissibly manufactured an exigency depends on "'the reasonableness and propriety of the investigative tactics that generated the exigency.'" *United States v. Rico*, 51 F.3d 495, 502 (5th Cir. 1995) (quoting *United States v. Duchi*, 906 F.2d 1278, 1284 (8th Cir. 1990)). The Fourteenth court found the issue of whether Aguilar deliberately created the exigent circumstance was a mixed question of fact and law and, therefore, deferred to the trial court's implied finding that Trooper Aguilar went to the hospital as soon as was practicable considering the circumstances of that morning. *Pearson*, 2014 WL 895509, at *3.

17

than alcohol.[7]  The *McNeely* court recognized that "an individual's alcohol level gradually declines soon after he stops drinking" and that a "significant delay in testing will negatively affect the probative value of the results."  The Court explicitly noted that these facts were "essential" to its holding in *Schmerber*, i.e., that under the circumstances, further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence. *McNeely*, 133 S.Ct. at 1561; *see Schmerber*, 384 U.S. at 770–771.

Here, while Higginbotham testified that Cole's body was metabolizing the methamphetamine in his system, there is no evidence whatsoever of the dissipation rate for methamphetamine levels in a person's blood.[8]  However, in its findings regarding exigent circumstances, the trial court did not rely upon the dissipation rate in determining that exigent

---

[7]Most of the cases involving drawing a specimen involve consumption of an alcoholic beverage.  The Texas Court of Criminal Appeals has written extensively on the science of "retrograde extrapolation."  *Mata v. State*, 46 S.W.3d 902, 909 (Tex. Crim. App. 2001) ("Retrograde extrapolation is the computation back in time of the blood-alcohol level—that is, the estimation of the level at the time of driving based on a test result from some later time.").  *Mata* explains the process that occurs from consumption of alcohol, its absorption rate, and the many factors to consider. The Court of Criminal Appeals explained that, in order to present expert testimony on this subject, it is necessary for the expert to demonstrate (1) some understanding of the difficulties associated with retrograde extrapolation, (2) an awareness of the subtleties of the science and the risks inherent in any extrapolation, and (3) an ability to clearly and consistently apply the science. *Id.* at 916.

One case discussing methamphetamine use is *Haley v. State*, 396 S.W.3d 756 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  There, an expert witness testified that, even though there is no set blood-methamphetamine level above which a person is considered intoxicated as a matter of law, such as the .08 rate applying to alcohol consumption, appellant's rate of 0.80 mpl was so high that his coordination, attention, and driving-ability must have been affected.  *Id.* at 766. Here, no evidence was offered concerning the absorption/dissipation rate of methamphetamine in the blood.  Without some indication of when the methamphetamine evidence would begin to dissipate, we cannot conclude that such evidence would likely be destroyed even if obtaining the warrant took an extra hour and a half.

[8]When asked how quickly the body absorbs methamphetamine, the expert witness stated that it depended on the manner in which the drug was administered—the slowest is by mouth, faster routes include snorting and smoking, and the fastest is intravenous injection.

18

circumstances existed, even though the fact was "essential" to the United States Supreme Court's decision in *Schmerber*.

Regarding exigent circumstances, *McNeely* requires that the officers identify other factors that would suggest they faced an emergency or unusual delay in securing a warrant. *McNeely,* 133 S.Ct. at 1567. Although *McNeely* involved a "routine" DWI stop, the Supreme Court stated,

> The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

*Id.* at 1568. In agreeing with the *Schmerber* case, *McNeely* confirmed that the State must show that the time necessary to obtain a warrant under the circumstances threatened the destruction of the blood evidence:

> In those drunk-driving investigations where police officers *can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search*, the Fourth Amendment *mandates* that they do so . . . . We do not doubt that *some circumstances will make obtaining a warrant impractical* such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test. That, however, is a reason to decide each case on its facts, as we did in *Schmerber*, not to accept the considerable overgeneralization that a per se rule would reflect.

*McNeely*, 133 S.Ct. at 1561 (internal quotation marks omitted) (emphasis added). The court further noted that "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id.* at 1563 (emphasis added).

As it too is based upon *McNeely*, we agree with the well-reasoned opinion of our sister court in *Douds*, as we agree that a court should neither be grading the severity of an accident nor

19

focusing its analysis on the delay attendant to an investigation. *See Douds*, 434 S.W.3d at 853–54. As in *McNeely* and *Schmerber*, our exigent circumstances analysis should focus on the delay attendant to obtaining a warrant, i.e., whether the State showed that, under the circumstances, the police could not reasonably obtain a warrant. *McNeely*, 133 S.Ct. at 1561; *Schmerber*, 384 U.S. at 770; *Turrubiate*, 399 S.W.3d at 153 n.4 (citing *United States v. Menchaca–Castruita*, 587 F.3d 283, 295–96 (5th Cir. 2009) (A finding of exigent circumstances "must be based on an officer's reasonable belief that *the delay necessary to obtain a warrant* will facilitate the destruction or removal of evidence . . . ." (emphasis added)).

In this case, the accident occurred around 10:20 p.m. Cole was already on the way to the hospital at the time Higginbotham arrived at the scene around 11:00 p.m. At 11:38 p.m., after speaking with her sergeant, Wright arrested Cole, read him the statutory warnings (DIC-24), and ordered his blood drawn. Cole's blood was drawn at 12:20 a.m., forty-two minutes after Wright spoke to Higginbotham, about an hour and a half after Higgenbotham was called to the accident scene, and about two hours after the accident itself.

As a warrant could have been obtained in an hour and a half, if Wright's call at 11:38 p.m. had spurred the warrant process, then a warrant could have been in hand by 1:08 a.m. Assuming the same forty-minute delay in drawing his blood, Cole's blood could have been drawn pursuant to a warrant before 2:00 a.m., only an hour and forty minutes after it was actually drawn. Therefore, this fails to reach the "now or never" level contemplated by exigent circumstances precedent. *See King*, 131 S.Ct. at 1856 (need to prevent imminent destruction of evidence sufficient justification for warrantless search); *Tata v. State*, No. 01-12-01119-CR,

20

2014 WL 4085462 (Tex. App.—Houston [1st Dist.] Aug. 19, 2014, pet. filed) (burning building created exigency justifying warrantless entry by fire officials and the search and seizure of arson evidence because destruction was imminent).

No attempt was made to obtain a warrant in this case, and even though Higginbotham knew neutral magistrates were on call and available to consider warrant requests, he did not speak to anyone about obtaining a warrant. Unlike in *Pearson*, there were about one dozen police officers on the scene in this case, and this accident happened as one group of officers' shift was ending and another group's was beginning. There is no indication that officers not on the scene were unavailable to help obtain a warrant. Finally, there is no evidence of the rate at which the drug was dissipating from Cole's bloodstream. As per our findings hereinabove, having examined the totality of the circumstances, we find that the State failed to show that the warrantless blood draw was justified by exigent circumstances. *Id.*

**III.    Harm Analysis**

Because we find that the State failed to meet its burden, we must now perform a harm analysis. The admission of evidence obtained in violation of the Fourth Amendment is subject to constitutional harm analysis pursuant to Rule 44.2(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106 (Tex. Crim. App. 2001). "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, [we] must reverse [the] judgment of conviction or punishment unless [we] determine[] beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). The harmless error inquiry under Rule 44.2(a) should adhere strictly to

21

the question of whether the error committed in a particular case contributed to the verdict obtained in that case. *Snowden v. State*, 353 S.W.3d 815, 821 (Tex. Crim. App. 2011).

Here, the results of the blood test were introduced through the testimony of an expert witness, Schwane, a toxicological chemist. He characterized the methamphetamine level in Cole's blood sample as being at "the very high end of a therapeutic range" and testified that such a level could cause intoxication. We are unable to find beyond a reasonable doubt that this evidence did not contribute to the verdict. While there is testimony that Cole was driving erratically and giving incoherent answers after the accident, and Cole admitted to taking methamphetamine that day, there is no evidence of how much he took, when it was ingested, the method of ingestion, or the rate at which it dissipated from his body. The testimony as to the precise amount of methamphetamine in his bloodstream was very important.

Accordingly, we reverse the trial court's judgment and remand the case for a new trial. Because our ruling on Cole's first point of error is dispositive, we need not address his second point of error.

Jack Carter
Justice

CONCURRING OPINION

The elephant in the courtroom here (and the matter barely touched upon by the majority opinion) is the good-faith exception to the exclusionary rule. In its brief and during oral argument, the State relied almost exclusively on the alleged existence of exigent circumstances

22

to exculpate it from the need to obtain a search warrant before having taken a sample of Cole's blood.

Until the United States Supreme Court issued its ruling in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), many judges and most law enforcement agencies in Texas believed that implied consent laws relieved authorities of the need to obtain a search warrant for a blood draw when there was intoxication of a driver on a public roadway suspected and the suspected miscreant refused to provide a breath-test specimen. If we are to be candid, we will recognize that the genuine reason that the police department did not promptly seek a search warrant to draw a sample of Cole's blood likely had nothing to do with the severity of the situation or the lack of idle police officers who would have been available to seek a search warrant; rather, the police, relying on the implied consent laws of Texas, did not believe that such a warrant was required.

Even though the good-faith exception to the exclusionary rule was not strongly argued by the State, it is not necessary for the State to raise an issue at either the trial court level or at the court of appeals level if it elects not to do so; it may raise it for the very first time when presented to the Texas Court of Criminal Appeals. *See Canida v. State*, 434 S.W.3d 163 (Tex. Crim. App. 2014). Although the State did not raise this argument at trial and only touched on it at the appellate level, we may address it. *See McClintock v. State*, No. PD-0925-13, 2014 WL 4843959 (Tex. Crim. App. Oct. 1, 2014) (holding that State may raise good-faith exception to exclusionary rule at any time provided it was prevailing party at trial). Therefore, I think it wise for us to demonstrate that our Court has considered the potential application of the good-faith exception to the exclusionary rule.

23

The exclusionary rule is not found anywhere in the United States Constitution. Rather, it is a court-mandated remedy for violations of the Fourth Amendment wherein the United States Supreme Court held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). "The exclusionary rule was fashioned as a sanction to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment." *Davis v. Mississippi*, 394 U.S. 721, 724 (1969). The exclusionary rule is a "last resort" sanction designed to deter police misconduct. *Davis v. United States*, 131 S.Ct. 2419, 2427 (2011).

The determination by the United States Supreme Court in *McNeely* that the implied consent laws of the states did not work to abrogate the necessity of obtaining search warrants for blood draws came as a surprise to many in the law enforcement community. *McNeely*, 133 S.Ct. 1552. The majority has said, "New rules for the conduct of criminal prosecutions apply retroactively to all cases pending on direct appeal or not yet final at the time the new rule is announced regardless of whether they constitute a clear break from past precedent" and cites cases to prove that point. An exception to this general rule is the good-faith exception.

The United States Supreme Court (looking back to the original purpose of using the exclusionary rule to deter intentional or reckless disregard of Constitutional protections under the Fourth Amendment) has held that when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, or when their conduct involves only simple, "isolated" negligence, the deterrence rationale loses much of its intended force, having the result that the exclusionary rule cannot "pay its way" by insuring compliance with Constitutional safeguards.

24

*Davis*, 131 S.Ct. at 2427–28. Therefore, under the circumstances of the good-faith belief as mentioned, there is a valid exception to the exclusionary rule mandated for the enforcement of United States constitutional Fourth Amendment protections.

However, despite that commonly-held belief that Texas' implied consent law provided cover to circumvent the necessity of obtaining a search warrant, it appears that this wide belief was not the law in Texas anyway. The Texas good-faith exception is much more limited than that announced by the federal courts.

Unlike the federal, judge-made exclusionary rule, the Texas good-faith exception is a statutory rule that provides an exception to the exclusion of unlawfully obtained evidence only if the law enforcement officer was "acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX. CODE CRIM. PROC. ANN. art. 38.23(b) (West 2005); *see Douds v. State*, 434 S.W.3d 842, 861 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (en banc). The Texas "Court of Criminal Appeals has previously rejected an effort to broaden the [Texas] good-faith exception using federal precedent. . . ." *Douds*, 434 S.W.3d at 861–62 (citing *Howard v. State*, 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (op. on reh'g) (declining to apply federal good-faith doctrine to Texas statutory good-faith exception)). Since "the Texas good faith exception is more limited than the scope of its federal counterpart . . . an officer's good faith reliance on the law or existing precedent is not recognized as an exception to the Texas exclusionary rule." *State v. Jackson*, 435 S.W.3d 819, 831 (Tex. App.—Eastland 2014, pet. granted) (citations omitted). Accordingly, because no warrant was issued in this case, the Texas good-faith exception does not apply. *See Jackson*, 435 S.W.3d at 831; *Douds*, 434

25

S.W.3d at 862; *State v. Anderson*, No. 09-13-00400-CR, 2014 WL 5033262, at *14 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.).

Apparently, then, the police could not rely on their apparently good-faith belief that no search warrant was required before they took a sample of Cole's blood.

Bailey C. Moseley
Justice

Date Submitted:     September 24, 2014
Date Decided:      December 18, 2014

Publish