FILED IN
COURT OF CRIMINAL APPEALS

June 4, 2015

ABEL ACOSTA, CLERK

PD-0077-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/3/2015 5:25:30 PM
Accepted 6/4/2015 8:07:40 AM
ABEL ACOSTA
CLERK

No. PD-0077-15

COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

STEVEN COLE, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Gregg County

\* \* \* \* \*

## STATE'S BRIEF ON THE MERITS

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

**ORAL ARGUMENT REQUESTED**

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

Appellant: **Steven Cole**.

Appellee: **The State of Texas**.

Counsel for Appellant at trial: **James R. (Rick) Hagan,** Attorney at Law, P.O. Box 3347, Longview, Texas 75606-3347.

Counsel for Appellant on appeal: **Ebb Mobley,** P.O. Box 2309, Longview, Texas 75606.

Counsel for the State at trial: **Stacey L. Brownlee** and **Madison Hood**, Assistant District Attorneys, 101 East Methvin, Suite 333, Longview, Texas 75601.

Counsel for the State on appeal: **Zan Colson Brown**, Assistant District Attorney, 101 East Methvin, Suite 333, Longview, Texas, 75601, and **Lisa C. McMinn**, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**1) Did the Court of Appeals conduct an incorrect exigent circumstances analysis when it required proof of a "now or never" level of urgency?**

**2) Were exigent circumstances present to draw Appellant's blood without a warrant when the accident created a substantial period of delay before blood could be drawn, the officer knew that it typically took 1-1 ½ hours to obtain warrant, and he suspected the defendant was under the influence of illegal drugs as opposed to alcohol, which has a predictable rate of elimination?**

**3) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

**4) If a warrantless blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid and that it dispensed with the warrant requirement?**

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**I. Exigency to justify warrantless blood draw examines whether additional time**

needed to obtain a warrant would "significantly undermine the efficacy of the blood test.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. Exigent circumstances were present when police knew it would take 1-1 ½ hours to obtain a warrant, the accident had already created considerable delay and limited the availability of officers to seek a warrant,  and the suspected intoxicant was a "a couple of hits of meth.". . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A. The accident caused a significant period of delay and limited the number of police officers available to seek a warrant.. . . . . . . . . . . . . . 9

       B.  The intoxicant in this case does not have a commonly known elimination rate.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  The mandatory blood draw statute does not require a warrant and is constitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       A.  The statute dispenses with the need for a warrant.. . . . . . . . . . . . . 14

       B.  Statutorily dispensing with a warrant is reasonable.. . . . . . . . . . . . 15

           1.  Advanced consent has been given in exchange for the driving privilege.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           2.  The State's special need for safe roads outweighs a DWI arrestee's limited expectation of privacy.. . . . . . . . . . . . . . . . . 17

           3.  The blood draw is a specific search incident to arrest for a narrow class of offenses.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

           4.  Exigency is present due to the dissipation of alcohol and the seriousness of the offense.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV. The remedy for a Fourth Amendment violation is not exclusion when police complied with a presumptively constitutional statute and case law interpreting it.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**A.    Under *Davis*, the Federal exclusionary rule does not require suppression.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**B.  Because the purpose of Art. 38.23 is to protect a suspect's rights from overzealous law enforcement, suppression is not required when the violation is not based on misconduct.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# INDEX OF AUTHORITIES

**Cases**

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . 23

*Beckendam v. State*, 441 S.W.3d 295 (Tex. Crim. App. 2014). . . . . . . . . . . . . . 13

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . 23

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . 25

*United States v. Chadwick*, 433 U.S. 1 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chavez v. State*, 9 S.W. 3d 817 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . 25

*Cheek v. United States*, 498 U.S. 192 (1991). . . . . . . . . . . . . . . . . . . . . . . . .  16

*New York v. Class*, 475 U.S. 106 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cole v. State*, __S.W.3d__,
     No. 06-13-00264-CR (Tex. App.–Texarkana, 2014). . . . . . . . . . . . . . 2, 6, 11

*Danforth v. Minnesota,* 552 U.S. 264 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 28n

*State v. Daugherty*, 931 S.W.2d 268 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . 25

*Davis v. United States*, 131 S. Ct. 2419 (2011). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Douds v. State*, 434 S.W.3d 842 (Tex App.–Houston [14th Dist.] 2014). . . . . . . .10

*Board of Education v. Earls*, 536 U.S. 822 (2002).. . . . . . . . . . . . . . . . . . . . . . . 17

*Fuller v. State,* 829 S.W.2d 191 (Tex. Crim. App. 1992).. . . . . . . . . . . . . . . . . . 25

*Arizona v. Gant*, 556 U.S. 332 (2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Heien v. North Carolina*, 135 S.Ct. 530 (2014). . . . . . . . . . . . . . . . . . . . . . . . . 28n

*Karnev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . 23

*Kentucky v. King*, 131 S.Ct. 1849 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Maryland v. King*, 133 S. Ct. 1958 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Illinois v. Krull*, 480 U.S. 342 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Knights*, 534 U.S. 112 (2001). . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Leon*, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Manning v. State*, 114 S.W.3d 922 (Tex. Crim. App. 2003). . . . . . . . . . . . . . 12-13

*Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . . . 8

*Missouri v. McNeely*, 133 S.Ct. 1552 (2013). . . . . . . . . . . . . . . . 7-10, 12, 20-13

*Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . 25, 27

*United States v. Montoya De Hernandez*, 473 U.S. 531 (1985). . . . . . . . . . . . . . 6

*United States v. Reid*, 929 F.2d 990 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . 21

*Rhodes v. State*, 240 S.W.3d 882 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 17

*Rocha v. State*, 16 S.W.3d 1 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . 26-27

*Samson v. California*, 547 U.S. 843 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Schmerber v. California*, 384 U.S.757 (1966). . . . . . . . . . . . . . . . . . . . . . . 10, 22

*Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989). . . . 17-20

*State v. Villarreal, __S.W.3d__*
    No. PD-0306-14 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . . . . . . . 1, 14, 23

*Welsh v. Wisconsin*, 466 U.S. 740 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22n

*Wilson v. State*, 311 S.W. 3d 452 (Tex. Crim. App. 2010).. . . . . . . . . . . . . . . . . 26

*Zap v. United States*, 328 U.S. 624 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Statutes

TEX. CODE CRIM. PROC. art. 38.23. . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 24, 26-27

TEX. TRANSP. CODE § 724.011. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. TRANSP. CODE § 724.012. . . . . . . . . . . . . . . . . . . . 5, 10, 14-15, 19-20, 23, 27

TEX. TRANSP. CODE § 724.013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. TRANSP. CODE § 724.016. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. TRANSP. CODE § 724.017. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. TRANSP. CODE § 724.019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. TRANSP. CODE § 724.064. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Other

http://www.tabc.state.tx.us/publications/brochures/BACCharts.pdf. . . . . . . . . . 12n

No. PD-0077-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

STEVEN COLE,                                                        Appellant

v.

THE STATE OF TEXAS,                                             Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully presents its brief on the merits.

**STATEMENT REGARDING ORAL ARGUMENT**

The State did not originally request oral argument, and the Court did not grant it. However, because the motion for rehearing has been granted in *State v. Villarreal,* __S.W.3d__, No. PD-0306-14 (Tex. Crim. App. 2014), and because this case presents an issue that has not been granted–the applicability of Art. 38.23–oral argument would be helpful. Therefore, the State requests oral argument.

1

## STATEMENT OF THE CASE

A jury convicted Appellant of intoxication manslaughter, enhanced by two prior felony convictions, and assessed a life sentence. The Court of Appeals reversed, holding that the trial court erred by admitting blood test results obtained from a nonconsensual, warrantless blood draw. *Cole v. State*, 454 S.W.3d 89 (Tex. App.–Texarkana, 2014). This Court granted the State Prosecuting Attorney's petition for discretionary review on April 22, 2015. The Court granted one extension of time until June 5, 2015, to file the State's brief.

## ISSUES PRESENTED

**1) Did the Court of Appeals conduct an incorrect exigent circumstances analysis when it required proof of a "now or never" level of urgency?**

**2) Were exigent circumstances present to draw Appellant's blood without a warrant when the accident created a substantial period of delay before blood could be drawn, the officer knew that it typically took 1-1 ½ hours to obtain warrant, and he suspected the defendant was under the influence of illegal drugs as opposed to alcohol, which has a predictable rate of elimination?**

**3) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

**4) If a warrantless blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid and that it dispensed with the warrant requirement?**

**STATEMENT OF FACTS**

At around 10:20 p.m., Appellant ran a red light at the intersection of South and South High Street in downtown Longview at an estimated 110-112 miles per hour. RR. III: 24, 27-32, 115, 153-54, 165.   He struck the driver's side of a pickup truck in the intersection, killing the driver, bending the truck into a half-moon shape,  and causing it to burst into flames. RR. III: 46-47, 51-53, 143, 162-65, 117-19, 175-76, IV:47- 49. The vehicles came to rest approximately 245 feet away from the initial point of impact. RR. III: 121.  Due to the fire and degree of impact, there was a large debris field, and traffic was blocked in all directions.  RR. III: 37-39, 114-16.

Approximately fifteen officers worked the accident scene, which happened near the time of shift change.  RR. III: 38-39, 178-79.  Officers from both the evening and midnight shifts were present.  RR. III: 179.  Those officers were blocking intersections and rerouting traffic so the accident could be investigated and the scene eventually cleared.  RR. III: 179-81.  The minimum number of officers for the evening shift is thirteen and eleven for the midnight shift.  RR. III: 178-80.  All the officers at the scene were performing necessary functions. RR. III: 183-88, 193-94. Officer Higginbotham testified that, although judges were on call to issue warrants, it would have taken two officers and 1-1½ hours at best; thus, obtaining a warrant would not have been feasible.  RR. III: 183-85, 190-91.  When asked what he would

3

do if a warrant was necessary, Higginbotham replied, "You do what you have to do," and "we would have had to take[] time out of everything else to procure one." RR. III: 191. Appellant was taken to the hospital for evaluation. RR. III: 234. He admitted to taking "a couple of hits of meth," and an officer observed that he was "tweaking," i.e., making involuntary bodily movements. RR. III: 87, 92, 221, 235. He was arrested at the hospital at 11:38 and refused to voluntarily provide a specimen of his blood. RR. III: 223-24; SX 9. After Officer Wright relayed this information to her sergeant, she was given the order to proceed with the mandatory blood draw, and Appellant's blood was drawn without a warrant at 12:20 a.m. RR. III: 223-24; SX 10. The results revealed 0.2 mg/L of amphetamine and 0.23 mg/L of methamphetamine, which was described by the toxologist as being at the "very high end of a therapeutic range," but a "moderate dose" for recreational use that could cause intoxication. RR. IV: 20-23; SX 13.

The trial court found exigent circumstances for the warrantless blood draw, stating:

> This case, you have one of the most major intersections in Longview, Texas, shut down. You have numerous officers on the scene. While there are other officers who could assist in some ways, the lead investigator, the person who has the specialized training in order to do an accident reconstruction, an accident investigation, is the officer who has to remain on the scene. So there are those exigent circumstances. You have factors that lead that officer having to remain there. There was

4

a large debris field; fire; again, a major intersection being involved. It was not just a typical little DWI arrest. Secondly, you also have the defendant currently at the hospital being transported by EMS. The officers also have to be concerned of whether he's given any additional medications, what his health and safety is. So there are other factors involved, other–that do not give time for a warrant that may be there in a regular DWI. Also, the timing of all to get the scene cleared is an exigent circumstance.

RR. III: 197-98.

## SUMMARY OF THE ARGUMENT

The warrantless blood draw was justified by exigent circumstances. When the exigency at issue is the dissipation of alcohol or drugs in the bloodstream, the applicable standard is not "now or never" as it is for the intentional destruction of tangible evidence. The degradation of the probative value of alcohol and drug evidence is a factor in the exigency analysis. Based on the severity of the accident in this case–which occupied at least half of the combined evening and midnight shifts of the Longview police force for hours–and an intoxicant with an elimination rate that is not commonly known, an officer could reasonably believe that the additional 1-1½ hours needed to obtain a warrant would significantly undermine the blood test's efficacy and would have taken two officers away from their duties at the accident scene.

Alternatively, TEX. TRANSP. CODE § 724.012 dispenses with the requirement

5

of a warrant. The Fourth Amendment requires only reasonableness; a search warrant or exception is not essential for a search to be reasonable. A blood draw pursuant to the statute is reasonable because it includes components of four well-recognized exceptions to the warrant requirement: consent, special needs, search incident to arrest, and exigent circumstances.

Even if a statutory, warrantless blood draw violates the Fourth Amendment, suppression of the evidence is not the proper remedy under the federal exclusionary rule or art. 38.23. The purpose of both exclusionary rules is to protect the rights of suspects from overzealous law enforcement. That purpose is not served when officers unknowingly violate the Fourth Amendment while relying on a presumptively constitutional statute and case law interpreting it.

## ARGUMENT

### I. Exigency to justify warrantless blood draw examines whether additional time needed to obtain a warrant would "significantly undermine the efficacy of the blood test."

Police need not obtain a warrant where exigent circumstances would make doing so impractical. *United States v. Montoya De Hernandez*, 473 U.S. 531, 553 (1985). The Court of Appeals noted that warrantless searches have been upheld "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime." *Cole*, 454 S.W.3d at 98, n.5. (citation

6

omitted). It concluded that, because Appellant's blood could have been drawn with a warrant three hours and forty minutes after the accident, the period of delay "fails to reach the 'now or never' level contemplated by exigent circumstances precedent." *Id.* at 103.

But not all destruction of evidence cases involve a threat of immediate destruction. *See Missouri v. McNeely*, 133 S.Ct. 1552, 1561 (2013) ("The context of blood testing is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a 'now or never' situation."). That is because, unlike a suspect in physical possession of easily disposable evidence that can be destroyed quickly, dissipation of alcohol in the body occurs autonomically. *Id*. *See also Kentucky v. King*, 131 S.Ct. 1849, 1857 (2011) ("drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain."). If "now or never" were required in every case involving the possible destruction of evidence, exigent circumstances could never be proven in a DWI.

In *McNeely*, the Court refused to hold that the dissipation of a substance in the bloodstream presents a *"per se* exigency... in all drunk-driving cases." 133 S.Ct. at 1556. Instead, the Court held that the existence of exigent circumstances must be determined on a case-by-case basis, considering the totality of the circumstances. *Id.* That fact that alcohol is naturally eliminated in the body will not dispense with the

need for a warrant, if, for example, the defendant is stopped for DWI in front of a courthouse full of judges.

But exigency can still be found when dissipation of alcohol or drugs in the bloodstream is combined with the passage of time or when it is reasonable to believe a warrant cannot be obtained within a reasonable amount of time. "The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood-alcohol test." *Id*. at 1561. In other words, the risk to the evidence need not rise to the level of total destruction or elimination. The degradation of the substance is also a factor. As the Supreme Court cautioned, "A significant delay in testing will negatively affect the probative value of the results." *Id*.

Retrograde extrapolation of alcohol is possible because the degree of absorption and elimination of alcohol are relatively fixed. But unknown variables–such as when the defendant last ate, and when, how fast, and how much he drank–will affect the equation so that the degree of intoxication at a given time is less certain. *Mata v. State*, 46 S.W.3d 902, 908-13 (Tex. Crim. App. 2001). "Testing nearer in time to the time of the alleged offense increases the ability to determine the

8

subject's offense-time BAC." *Id*. at 916. But "longer intervals may raise questions about the accuracy of the calculation." *McNeely*, 133 S.Ct. at 1563.

In short, exigent circumstances exist when the period of dissipation is unknown, or it is known but the substance will be eliminated or its probative value significantly undermined during the time required to obtain a warrant.

## II. Exigent circumstances were present when police knew it would take 1-1 ½ hours to obtain a warrant, the accident had already created considerable delay and limited the availability of officers to seek a warrant, and the suspected intoxicant was a "a couple of hits of meth."

*McNeely* noted that "special facts," like an accident are not necessarily required, and exigency can arise in even an "ordinary traffic stop." *Id*. at 1568. The ability to "obtain a warrant in an expeditions way" in a given case could be affected by "the procedures in place for obtaining a warrant or the availability of a magistrate." *Id.* An evaluation of the reasonableness of the officer's belief that exigency existed examines "the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence." *Id.*

### A. The accident caused a significant period of delay and limited the number of police officers available to seek a warrant.

When something out of the ordinary causes significant delay, the elimination rate of the substance becomes increasingly important. In this case, two hours had already elapsed from the time of the accident until Appellant's blood was drawn

9

pursuant to TEX. TRANSP. CODE § 724.012(b). Getting a warrant would have removed two officers from their duties at the accident scene and taken up to an additional 1 ½ hours, for a total delay of 3 ½ hours. In *Schmerber v. California*, 384 U.S.757, 770-71 (1966), the Supreme Court found exigent circumstances when, "Further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence.[1] That determination was adopted in *McNeely*. 133 S.Ct. at 1563 (Dissipation "may support a finding of exigency in a specific case, as it did in *Schmerber*.")

The Fourteenth Court of Appeals has held that the number of police involved in the investigation, the ability to process a warrant application during the investigation, and delay caused by the time needed to investigate is relevant to this determination. *Douds v. State*, 434 S.W.3d 842, 853-54 (Tex App.–Houston [14th Dist.] 2014, pet. granted). "The State should be responsible for asking officers who handle accidents to explain the demands of a particular investigation that made it

---

[1]*Schmerber* does not explicitly set out how much time elapsed from the accident until the defendant's blood was drawn, but it suggests the arrest (and perhaps the decision to draw the blood) was made within two hours of the accident. *Id*. at 769 (officer arrived at the scene shortly afer the accident, smelled alcohol, and observed bloodshot watery eyes, then saw him at the hospital "within two hours" and observed the same symptoms).

impractical for police to obtain a warrant before any blood alcohol evidence dissipated." *Id*. at 854.

That is exactly what the State did here. Officer Higginbotham explained his accident investigation and the need for personnel to close off traffic at two major intersections. RR. III: 178-81. Approximately half of the Longview police force on duty during the evening and midnight shifts was at the accident scene, performing necessary functions. RR. III: 38-39, 178-79. Yet the Court of Appeals observed, "There is no indication that officers not on the scene were unavailable to help obtain a warrant." *Cole*, slip op. at 21. This criticism improperly focuses on evidence not in the record instead of evidence that is in the record. In addition, under the Court of Appeals' theory, if there is even one remaining officer not actively involved in the case, there will never be exigent circumstances. The exigent circumstances exception requires impracticality in obtaining a warrant, not impossibility. *See McNeely,* 133 S.Ct. at 1561. ("We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test.").

**B.    The intoxicant in this case does not have a commonly known elimination rate.**

In addition to the substantial delay, this case involved methamphetamine, not

alcohol. Street drugs have different methods of ingestion with correspondingly different rates of absorption.[2] The Court of Appeals recognized the possibility that methamphetamine has a different rate of elimination, but held, "Without some indication of when the methamphetamine evidence would begin to dissipate, we cannot conclude that such evidence would likely be destroyed even if obtaining the warrant took an extra hour and a half." *Id*. at 18 n. 7. But the issue is not the evidence before the trial or appellate courts, but the reasonableness of the officer's actions based on the facts known to him at the time. *See McNeely*, 1564 S.Ct. at 1564 n.7 (officers' determination of exigency must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

Although elimination rates of alcohol may be within the average police officer's wheelhouse,[3] the same is not true for controlled substances. And assuming an officer is familiar with that information, even experts cannot always readily determine intoxication from toxicology reports. For example cocaine, metabolizes in the body to form benzoylecgonine. *Manning v. State*, 114 S.W.3d 922, 924 (Tex.

---

[2]The toxicologist testified that the rate of absorption of methamphetamine depends on the means of ingestion. The fastest is by injection, followed by snorting, smoking, and oral administration. RR. IV: 15. But this evidence was not before the trial court at the time of its ruling.

[3]http://www.tabc.state.tx.us/publications/brochures/BACCharts.pdf

Crim. App. 2003). That metabolite does not necessarily establish intoxication or pinpoint the amount consumed or time of consumption. *Id.* (witness testified that the amount of metabolite in defendant's blood showed only that he had ingested cocaine at some point, but it did not demonstrate intoxication.); *Beckendam v. State*, 441 S.W.3d 295, 297 (Tex. Crim. App. 2014) (expert witness testified that a large amount of metabolite in the blood is consistent with either a large dose or with habitual cocaine use.). Here, the toxologist testified that the amount of methamphetamine in Appellant's blood "could" cause intoxication. RR. IV: 20-23.

A reasonable officer should not be expected to know the rate of absorption, elimination, or metabolization of street drugs of unknown purity and method of administration. In addition, police in this case were concerned about the effect that other medications Appellant might receive at the hospital would have on the ability to determine what was in his system at the time of the accident. RR. III: 187. These unknown factors make it all the more reasonable to believe that the evidence would likely be destroyed, degraded, or compromised had the officer waited an additional 1 ½ hours to get a warrant.

**III. The mandatory blood draw statute does not require a warrant and is constitutional.**

The Court of Appeals held that the warrantless blood draw was not permissible

under TEX. TRANSP. CODE § 724.012(b).  *Cole*, 454 S.W.3d at 97 (citing *State v.*

*Villarreal,* __S.W.3d__ No. PD-0306-14, 2014 (Tex. Crim. App. 2014) (rehearing

granted)).  Section 724.011(a) of the Transportation Code, known as the implied

consent provision, states:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place ... the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

Subsection (b) of Section 724.012 of the Transportation Code—the mandatory

blood-draw provision—states, in part:

> A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> (1) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
>
> (A) any individual has died or will die...

**A.  The statute dispenses with the need for a warrant**.

The mandatory blood draw provision implicitly dispenses with the need for a

warrant. Section 724.012(b) provides that under certain circumstances, "A peace officer shall require the taking of a specimen of the person's breath or blood...." On the other hand, TEX. TRANSP. CODE § 724.013 states, "Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." Taken together, these provisions require an officer to force the taking of blood from a defendant under certain circumstances. If those circumstances are not present, the officer may not require a specimen if the person refuses. Neither provision envisions the possibility of a search warrant. Despite the prohibition against compelled taking of a specimen outside the parameters of subsection (b), such a seizure is undoubtedly proper with a search warrant. And subsection (b) requires the officer to obtain the specimen without regard to whether a magistrate refuses to issue a search warrant. Furthermore, TEX. TRANSP. CODE §§724.017(a), 724.16 (a), 724.019 (a), (d), and 724.064 refer to specimens "taken at the request or *order* of a peace officer." (emphasis added). A search warrant is the "order" of a magistrate, not a peace officer.

**B. Statutorily dispensing with a warrant is reasonable**.

Warrantless blood draws under Section 724.012(b) following an arrest for DWI are reasonable under Fourth Amendment jurisprudence when viewed under an aggregate framework encompassing components of consent, special needs, search

15

incident to arrest, and exigent circumstances.   Even if none of these components is a sufficient substitute on its own, the totality of these considerations make a statutory warrantless blood draw reasonable.  *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 119-22 (2001) (search of probationer reasonable based on a known and accepted cart blanche probation search condition—which significantly reduced privacy expectations and was needed to promote legitimate state interests—and reasonable suspicion of wrongdoing); *Samson v. California*, 547 U.S. 843, 852-56 (2006) (suspicionless search of parolee reasonable based on a known and accepted cart blanche parole search condition, which eliminated any expectation of privacy and served the state's substantial interest of preventing recidivism).

**1. Advanced consent has been given in exchange for the driving privilege.**

The statute establishes, under narrowly tailored circumstances, irrevocable consent to provide a blood or breath specimen. The implied nature of the consent derives from the fact that use of the State's roadways is a privilege that is conditioned upon following the laws, rules, and regulations that govern usage.  Appellant was on notice of the terms of the implied consent mandatory blood draw provision.  *See Cheek v. United States*, 498 U.S. 192, 199 (1991) (every person is presumed to know the law).  Because Appellant voluntarily chose to use public roadways, any belated challenge to irrevocability and voluntariness based on post-arrest events as a means

to escape accountability should not be entertained.  Cf. *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007) (the doctrine of estoppel by contract bars a party who accepts the benefits of a contract from complaining about its existence, validity, or effect); *Board of Education v. Earls*, 536 U.S. 822, 828-38 (2002) (sanctioning a mandatory drug-testing policy for students as a condition of participation in extracurricular activities); *Zap v. United States*, 328 U.S. 624, 628-30 (1946) (consent to search pursuant to a contractual agreement upheld as a valid waiver of privacy interests despite the subject's subsequent protest at the time of the search), vacated on other grounds, 330 U.S. 800 (1947).  Although licensed drivers do not enter into a contract per se, their implicit agreement to consent under conditions outlined in the statute is given in exchange for the privilege of driving.  That agreement is contractual in nature even if not in fact.

        **2.    The State's special need for safe roads outweighs a DWI arrestee's limited expectation of privacy**.

The principles behind the special needs exception support warrantless blood draws under §724.012(b).  Considering the State's interest in maintaining safe roads and waterways, mandatory testing under the narrowly tailored circumstances provided in §724.012(b) strikes an appropriate balance with individual privacy interests.  In *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 652 (1989), the Supreme Court addressed a Fourth Amendment challenge to railroad regulations

17

mandating blood and urine testing of employees after certain accidents and authorizing such testing of employees who violated certain safety rules. The Court recognized that the government's special needs, apart from law enforcement, make the "warrant and probable-cause requirement impracticable." *Id*. at 619. The government has a legitimate, non-law enforcement interest in regulating railroad employees engaged in "safety-sensitive tasks" to prevent accidents that cause personal injury and property damage. *Id*. at 620-21. The Court then determined that the regulations satisfy the purpose of a warrant. *Id*. at 622. Because of "the standardized nature of the tests and minimal discretion vested with those charged with administering the program, there are virtually no facts for a neutral magistrate to evaluate." *Id*. And the discretion used to determine whether to test employees who violated the rules is based on limited, objective criteria that prevent unbridled discretion. *Id*. at 622 n.6. Further, requiring a warrant may result in the destruction of evidence of impairment. *Id*. at 623-24.

Next, the Court held that the regulations are reasonable despite the absence of any individualized suspicion of impairment. *Id.* at 624-33. The privacy interests implicated by the tests are minimal and employee expectation of privacy is diminished by participation in a heavily regulated industry. *Id*. at 624-27. The Court also observed that the regulations serve as an effective deterrent because employees

18

are aware that they will be tested "upon the occurrence of a triggering event." *Id*. at 629-30.

Unlike the regulations at issue in *Skinner*, Section 724.012(b) does not dispense with the probable cause, individualized suspicion requirement. The arresting officer must have probable cause to believe that the person committed an offense under Chapter 49. TEX. TRANS. CODE § 724.012(b). Section 724.012(b) only dispenses with the warrant requirement, and the various interests examined in *Skinner* justify warrantless blood draws.

Operating a vehicle is a "safety-sensitive" activity, as it becomes "lethal when operated negligently by persons who are under the influence of alcohol or drugs." *Skinner*, 489 U.S. at 628. So like the government's interest in the regulations in *Skinner*, Texas has a significant interest in ensuring safety by regulating the conduct of those who use its public roads. Mandatory draws, administrative license revocations, and penalties for driving while intoxicated, have a deterrent effect and therefore further safety.

Additionally, as in *Skinner*, the circumstances under which a draw is mandatory are known to the public and carefully circumscribed to limit officer discretion based on objective criteria. Therefore, the statute substantially fulfills the purposes of a warrant—to protect against random and arbitrary intrusion, limit the objective and

scope of the search, and ensure objectivity. See *Skinner*, 489 U.S. at 622. And as with the railroad regulations, blood test results obtained under §724.012(b) help the state "obtain invaluable information about the causes of major accidents . . . and to take appropriate measures to safeguard the general public." *Id.* at 630.

The public interests served by §724.012(b) substantially outweigh the individual privacy interests implicated and justify dispensing with the warrant requirement. Although everyday drivers are not as pervasively regulated as commercial carriers, that distinction is offset by the statute's narrow circumstances and probable cause requirement.

### 3. The blood draw is a specific search incident to arrest for a narrow class of offenses.

Section 724.012(b) may also be regarded as a codification of the search incident to arrest exception. The exigency-based consideration of preventing the loss or destruction of evidence is not essential to the search incident to arrest exception. *McNeely*, 133 S. Ct. at 1559 n.3 ("We have recognized a limited class of traditional exceptions to the warrant requirement that apply categorically and thus do not require an assessment of whether the policy justifications underlying the exception, which may include exigency-based considerations, are implicated in a particular case."); *United States v. Chadwick*, 433 U.S. 1, 14 (1977) (search incident to arrest may be "made whether or not there is probable cause to believe that the person arrested may

have a weapon or is about to destroy evidence."). Nevertheless, the statute operates to obtain evidence of the offense of arrest before it is destroyed by the process of dissipation in the body.

While a venipuncture blood draw is "an invasion of bodily integrity [that] implicates an individual's 'most personal and deep-rooted expectations of privacy,'" *McNeely,* 133 S.Ct. at 1558, those interests are countered by the diminished expectation of privacy experienced by DWI arrestees. "[A]utomobiles are justifiably the subject of pervasive regulation by the State. Every operator of a motor vehicle must expect that the State, in enforcing its regulations, will intrude to some extent upon that operator's privacy[.]" *New York v. Class*, 475 U.S. 106, 113 (1986). And most importantly, the reduced expectation of privacy following an arrest for DWI further justifies the warrantless taking of a blood sample to determine blood alcohol content. *Cf. United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991) (breathalyzer search incident to DWI arrest held to be constitutional).

In addition, the suspect's privacy rights are protected by the narrowly tailored scope of the search, which is tied to the arrestable offense and supported by probable cause. *Cf. Arizona v. Gant*, 556 U.S. 332, 344, 351 (2009) (a vehicle search incident to arrest is permissible when there is reason to believe that evidence of the offense of arrest could be found in the vehicle). The blood specimen is used only to determine

21

a person's level of intoxication and does not lead to the discovery of incriminating evidence of past crimes. *Compare with Maryland v. King*, 133 S. Ct. 1958, 1980 (2013) (DNA collected from arrestees during booking compared to unsolved-crime database).

### 4. Exigency is present due to the dissipation of alcohol and the seriousness of the offense.

Finally, §724.012(b) includes an element of exigency. The dissipation of evidence of intoxication from the body, though it does not constitute exigent circumstances in every case, *McNeely*, 133 S. Ct. at 1563, is an important consideration because the delay in obtaining a warrant may result in the destruction of evidence. *See Schmerber*, 384 U.S. at 770-71.[4]

---

[4]The seriousness of the offense plays a role in the exigency determination. *See Welsh v. Wisconsin*, 466 U.S. 740, 749-51 (1984) (warrantless entry into a home requires probable cause and exigent circumstances, and the gravity of the offense is a factor in evaluating exigency). The Court did not draw a bright line rule between misdemeanors and felonies, but stated, "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." It noted that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." *Id*. at 754 n.14. The same rationale should apply to the State's interest in securing evidence to prove a particular offense. It goes without saying that Texas prioritizes the prosecution of DWI, especially in cases that cause death or injury, are committed by repeat offenders, or potentially endanger children.

**IV. The remedy for a Fourth Amendment violation is not exclusion when police complied with a presumptively constitutional statute and case law interpreting it.**

The blood draw in this case occurred in 2011, before any court held that a warrantless blood draw that complies with §724.012(b) violates the Fourth Amendment. At the time of the search, the statute was presumptively constitutional. *See Karnev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("Statutes are presumed to be constitutional until it is determined otherwise."). Before *Villarreal*, this Court had held that the statute "expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant," and "enabl[es] [officers] to draw blood in certain limited circumstances even without a search warrant." *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002). And prior to *McNeely,* this Court held that dissipation of alcohol from the blood stream alone constitutes exigency which, combined with probable cause and a reasonable method of drawing blood, does not require a warrant. *Aliff v. State*, 627 S.W.2d 166, 169-70 (Tex. Crim. App. 1982). The officer in this case acted in reliance on a presumptively constitutional statute that required him to compel a specimen of Appellant's breath or blood and on case law that held a warrant was not required. So even if the statute or the officer's actions in compelling a warrantless blood draw is found to be unconstitutional, the evidence in this case should not be

23

suppressed under either the Federal or Texas exclusionary rules.

**A.     Under *Davis*, the Federal exclusionary rule does not require suppression.**

The Supreme Court has held that the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted objectively reasonably by relying on a statute that was later declared unconstitutional, *Illinois v. Krull*, 480 U.S. 342, 349-57 (1987), or on binding judicial precedent that was subsequently overruled. *Davis v. United States*, 131 S. Ct. 2419, 2428-34 (2011). Applying the exclusionary rule to a search that was permissible at the time does not serve the rule's purpose of deterring police misconduct. *Id*. at 2424-28. For purposes of the Fourth Amendment, the good-faith exception prevents suppression.

**B. Because the purpose of Art. 38.23 is to protect a suspect's rights from overzealous law enforcement, suppression is not required when the violation is not based on misconduct.**

Suppression is also not justified under TEX. CODE CRIM. PROC. art. 38.23(a), which prohibits admission of evidence "obtained...in violation of [the law.]"[5]

---

[5]"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

24

Subsection (b) creates an exception for "objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." This Court has observed that subsection (b) is the only legislative exception to subsection (a), and it is impermissible for the courts to imply exceptions. *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996). But as explained below, the Court has interpreted "obtained...in violation of [the law]" to be inapplicable in certain situations.

In *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991), this Court held that a reviewing court should examine the plain language of a statute when interpreting its meaning, and should consult extratextural sources only if the plain language is ambiguous or leads to absurd results that the legislature could not have intended. The role of the courts is to "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Id.* The literal text of subsection (a) seems to apply to any violation of the law, but this Court has not always applied the plain meaning of that language, which it acknowledged in *Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000). *See also Miles v. State*, 241 S.W.3d 28, 32 (Tex. Crim. App. 2007) (Art. 38.23 "is considerably more complex in application than its simple words suggest.").

For example, this Court has held that a defendant must establish standing to complain about a private person's illegal seizure of evidence from a third party.

25

*Fuller v. State,* 829 S.W.2d 191, 201-02 (Tex. Crim. App. 1992). And in *Miles*, the Court held that a person's violation of traffic laws in order to make a citizen's arrest did not implicate article 38.23, noting that "only those acts which violate a person's privacy rights or property interests are subject to the state or federal exclusionary rule." 241 S.W.3d at 36, 46; *see also Wilson v. State*, 311 S.W. 3d 452, 459 (Tex. Crim. App. 2010) (the violation of the law at issue must be related "to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime.").

In *Rocha v. State*, 16 S.W.3d 1 (Tex. Crim. App. 2000), this Court held that Article 38.23 does not apply to evidence obtained in violation of the Vienna Convention. First, it held that a treaty is not a "law []of the United States." *Id*. at 14-16. That determination could have ended the analysis, but the Court went on to discuss the policy implications of its holding. It concluded that, because a treaty does not create enforceable individual rights and a violation of the treaty has other means of enforcement, article 38.23 did not provide a remedy. *Id.* at. 18-19.

By holding that not all violations of the law require suppression, the Court has implicitly determined that "violation of the law" is ambiguous. *See, e.g., Rocha*, 16 S.W.3d at 16 ("The consequences of a particular construction" of a statute is appropriate when addressing an ambiguous statute). Therefore, it is appropriate to

consider the purpose of article 38.23 when determining whether a violation of the law requires exclusion.

The purpose of article 38.23 is: "to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement," and "to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution." *Wilson,* 311 S.W.3d at 459. It is not designed to protect citizens from overzealous legislation or overzealous court opinions. Similarly, it's purpose is not simply the protection of a suspect's rights against *any* violation of the law. If that were the case, all violations, even those in *Miles* and *Rocha*, would require suppression. Instead, the exclusionary sanction is aimed at deterring misconduct by law enforcement. That purpose is not served by suppressing evidence obtained by police who comply with the dictates of a presumptively valid statute and case law interpreting it, even if that statute or case law is later invalidated. Under those circumstances,

> [E]xcluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*United States v. Leon*, 468 U.S. 897, 919-20 (1984) (internal citations and quotations omitted).

If this Court determines that §724.012(b) is unconstitutional or that it has

27

always required a search warrant despite prior case law to the contrary, then any officer who executed a search under the statute without a warrant violated the Fourth Amendment.[6]  But at the time of the blood draw in this case, the evidence was not obtained in violation of the statute, the case law interpreting it, or a reasonable interpretation of the Fourth Amendment.  Therefore, the evidence was admissible and the Court of Appeals' judgment should be reversed.

In the alternative, this case should be remanded for the Court of Appeals to address harm from the admission of the blood test results.  Evidence of intoxication in this case was strong, and the toxologist's testimony about the amount of amphetamine and methamphetamine in Appellant's system was not especially damning.  Appellant drove over 100 mph in downtown Longview, admitted to methamphetamine use, and was "tweaking." RR. III: 87, 92, 154, 221, 235.  On the other hand, the toxologist testified that the amount of methamphetamine in

---

[6]Like a tree falling in the woods when no one is around to hear it, a Fourth amendment violation is still a Fourth Amendment violation even if no one knows it at the time.  *See Danforth v. Minnesota,* 552 U.S. 264, 271 (2008) ("[T]he source of a "new rule" is the Constitution itself, not any judicial power to create new rules of law.  Accordingly, the underlying right necessarily pre-exists our articulation of the new rule."); *Heien v. North Carolina*, 135 S.Ct. 530 (2014) ("In those cases, however, we had already found or assumed a Fourth Amendment violation.  An officer's mistaken view that the conduct at issue did not give rise to such a violation—no matter how reasonable—could not change that ultimate conclusion.").

Appellant's system was a "moderate" recreational dose that "could" have caused intoxication. RR. IV: 20-23. Because the lab report and supporting testimony did little more than corroborate Appellant's admission that he had taken "a couple of hits of meth," any error was harmless.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals set this case for submission, and that after submission, this Court reverse the decision of the Court of Appeals. In the alternative, the State prays that the Court remand to the Court of Appeals for a harm analysis with regard to the admission of the blood test results.

Respectfully submitted,

/s/ LISA C. McMINN

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

30

## CERTIFICATE OF COMPLIANCE

I certify that, according to the WordPerfect word count tool, this document contain 7983 words.

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of June, 2015, the State's Brief on the Merits was served via certified electronic service provider to:

Zan Colson Brown
Assistant District Attorney
101 East Methvin, Suite 333
Longview, Texas, 75601
Zan Colson Brown
zan.brown@co.gregg.tx.us

Ebb Mobley
P.O. Box 2309
Longview, Texas 75606
ebbmob@aol.com

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney